UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PINA,

        Plaintiff,

    v.

STEPHEN MATTERN, WILLIAM
McCLEAN, EDWARD MURRAY,
SCOTT SAUCHUCK, as they constitute
the Plympton Board of Appeals, not
individually and FRED SVENSON, as
he is Building Inspector and Zoning
Officer for Plympton and not
individually and THE TOWN OF
PLYMPTON,

        Defendants.

Case No. 03-11949-NG

**AFFIDAVIT OF PATRICIA RENEE PINA**

NOW COMES Patricia Renee Pina under oath saying as follows:

1. I am a resident of 59 Parsonage Road, Plympton, MA 02367.

2. I am the majority owner of Aces Wild Farm and Ranch at that address
   and serve in the capacity as Chief Executive Officer.

3. The property at the address has consistently been dedicated to farming
   use from early settlement times. For the past six years, the farm
   consists of 36 acres of land dedicated to use as a horse farm; currently
   there are approximately 30 head of horses and 30 sheep on the
   premises. The primary business of the farm is to breed, train and sell
   American quarter horses. At all times during the calendar year, there
   are several mares in foal and several stallions standing at stud. The
   adjunct business of the farm is the development of the sheep flock

through breeding. In the regular course of agricultural business concerning the flock the following activities are conducted: shearing of the sheep, carding for wool, sale of the animals and product derived from the animals, preparing the sheep for market or the products derived from the sheep for market.

The present and intended use of the farm with respect to horses consists of: breeding activities, pasturing, stabling, exercising, training, boarding, birthing, arranging vetting, maintaining facilities for the collection of colostrum from nursing mares, maintenance of facilities for collection, storage, shipment, and receiving same, for artificial insemination, conduct of clinics, giving of riding lessons, riding on the premises by owners of boarded horses, dealing in horses, instructing in breeding techniques, raising of horses for sale at market, including the training and development of saleability of horses by experienced and inexperienced prospective riders, particularly young riders, so as to develop and accustom said horses to young, experienced, inexperienced and mentally challenged riders.

4.  The buildings on the premises consist of a farmhouse built in the 1700's, a two-story barn housing sheep and equipment and a separate standing barn for stabling horses. Upon information and belief, Aces Wild Farm and Ranch is the largest horse-breeding farm, as determined by live-foal count produced yearly, in New England.

5.  Farm labor to date has largely been provided by myself and a cadre of diverse volunteers consisting of horse owners and boarders, student interns and persons being trained in the horse breeding discipline.

6.  All animals, particularly horses, require consistent care that addresses nutrition, health and safety issues and is highly labor intensive during

the breeding and foaling season (largely January through August). Intensive monitoring of the breeding and foaling operations is required. When mares are foaling, they typically require 24-7 monitoring for their safety and the safety of the newborn.

7.  It is my business plan, in order to expand the business and be competitive and ensure quality standards, to finance and cause the construction of a much larger indoor breeding and training facility on the premises which will consist of storage areas, tack areas, feed and veterinarian supply storage, breeding stations and a large arena for the exercising and training of horses for eventual sale.

8.  As an adjunct to the expanded breeding facility, temporary labor in the form of H-2A workers will be required to provide the temporary labor demanded and such workers will need to be housed, particularly during the peak seasons of breeding and foaling (from January to August). Since under the H-2A program employers must provide housing for the agricultural workers, pursuant to the Department of Labor program, I have purchased and brought to the facility four mobile home housing units in order to provide the required housing. I have made application to the Department of Employment and Training of the Commonwealth of Massachusetts and the United States Department of Labor concerning the requisites of the H-2A program and am fully prepared to utilize such workers. In any event, use of the manufactured homes for housing is and will be an accessory use to the above-described farming activities and would not be used for rental property or to house individuals other than those who work for Aces Wild Farm. On site housing for H-2A workers is customarily incidental to agricultural business in the Commonwealth. Additionally, the use of farm workers in intensive seasonal agricultural pursuits is

prevalent in the Commonwealth and without the utilization of such workers, agricultural businesses in the Commonwealth do not thrive.

9. Upon information and belief based upon documents provided to me by Josc Ocasio from the Massachusetts Division of Employment and Training, there are in excess of 106 farm labor camps in the Commonwealth of Massachusetts using migrant and H-2A workers incidental to agricultural business. Attached is an exemplar.

10. In addition to the volunteers and paid workers on the premises, it is anticipated from time to time in conjunction with the breeding, training and sale of the mares, stallions and foals that training clinics will be held on the premises.

11. I have attended the University of Vermont; major course of study including "Light Horse Management" and "Riding Instruction," and am licensed with the Commonwealth of Massachusetts Department of Food and Agriculture, Equine Affairs and Activities Division (1981 to current). I have been continuously involved in the horse industry since 1981 working with mentally and physically handicapped children; stable management; equestrian art instruction; the training and breeding of US quarter horse champions and have competed in national competitions consistently over the past 20 years and am affiliated with the following organizations: American Quarter Horse Association, Massachusetts Quarter Horse Association, Northeast Reining Horse Association, National Reining Association, Plymouth County Horse Leaders Advisory, Plymouth County FSA Committee, Plymouth County 4H Leaders, and Massachusetts Stable Owners, Operators and Instructors.

12. Attached hereto are true and accurate copies of the following
documents:

(a.) A 3-page summary of nurse-mare services;

(b.) Subsurface sewage disposal plan for 59 Parsonage Street,
Plympton, MA prepared by Grady Consulting L.L.C.
registered professional civil engineers (2 pages);

(c.) Olympia Building Systems "1 page;"

(d.) Application for Certificate of Occupancy for a Farm Labor
Camp from 7/12/03;

(c.) 7/14/03 Letter from Wild Aces to Board of Selectman
regarding her Application for Farm Labor Camp;

(f.) Department of Public Health Report of Inspection;

(g.) Breeding Contract and Registration Certificates;

(h.) Letter from Jose Ocasio from the Massachusetts Division of
Employment and Training dated 7/15/03;

(i.) Letter from Howard Wensley from the Executive Office of
Health and Human Services; Department of Pubic Health;
Division of Community Sanitation dated 7/14/03;

(j.) Housing Discrimination Complaint dated 9/17/03;

(k.) Town of Plympton Zoning Board of Appeals Notice of
Decision;

(l.) 2004 Farm and Home Plan

(m.) Letter from Timothy M. Robison of the U.S. Department of
Housing and Urban Development (HUD) regarding "Housing
Discrimination Inquiry" dated 9/4/03;

(n.) Town of Plympton Board of Appeals Application for Appeal
dated 6/26/03; and

(o.) Exemplar of farms with labor camps in the Commonwealth of
Massachusetts.

Signed under the pains and penalties this _4th_ day of June 2004.

_Patricia Renee Pina_

PATRICIA RENEE PINA

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA PINA,

    Plaintiff,

    v.

STEPHEN MATTERN, WILLIAM McCLEAN, EDWARD MURRAY, SCOTT SAUCHUCK, as they constitute the Plympton Board of Appeals, not individually and FRED SVENSON, as he is Building Inspector and Zoning Officer for Plympton and not individually and THE TOWN OF PLYMPTON,

    Defendants.

Case No. 03-11949-NG

## AFFIDAVIT OF PATRICIA RENEE PINA

NOW COMES Patricia Renee Pina under oath saying as follows:

1. I am a resident of 59 Parsonage Road, Plympton, MA 02367.

2. I am the majority owner of Aces Wild Farm and Ranch at that address and serve in the capacity as Chief Executive Officer.

3. The property at the address has consistently been dedicated to farming use from early settlement times. For the past six years, the farm consists of 36 acres of land dedicated to use as a horse farm; currently there are approximately 30 head of horses and 30 sheep on the premises. The primary business of the farm is to breed, train and sell American quarter horses. At all times during the calendar year, there are several mares in foal and several stallions standing at stud. The adjunct business of the farm is the development of the sheep flock

through breeding. In the regular course of agricultural business
concerning the flock the following activities are conducted: shearing
of the sheep, carding for wool, sale of the animals and product derived
from the animals, preparing the sheep for market or the products
derived from the sheep for market.

The present and intended use of the farm with respect to horses
consists of: breeding activities, pasturing, stabling, exercising, training,
boarding, birthing, arranging vetting, maintaining facilities for the
collection of colostrum from nursing mares, maintenance of facilities
for collection, storage, shipment, and receiving same, for artificial
insemination, conduct of clinics, giving of riding lessons, riding on the
premises by owners of boarded horses, dealing in horses, instructing in
breeding techniques, raising of horses for sale at market, including the
training and development of saleability of horses by experienced and
inexperienced prospective riders, particularly young riders, so as to
develop and  accustom said horses to young, experienced,
inexperienced and mentally challenged riders.

4.  The buildings on the premises consist of a farmhouse built in the
    1700's, a two-story barn housing sheep and equipment and a separate
    standing barn for stabling horses. Upon information and belief, Aces
    Wild Farm and Ranch is the largest horse-breeding farm, as
    determined by live-foal count produced yearly, in New England.

5.  Farm labor to date has largely been provided by myself and a cadre of
    diverse volunteers consisting of horse owners and boarders, student
    interns and persons being trained in the horse breeding discipline.

6.  All animals, particularly horses, require consistent care that addresses
    nutrition, health and safety issues and is highly labor intensive during

the breeding and foaling season (largely January through August).
Intensive monitoring of the breeding and foaling operations is
required. When mares are foaling, they typically require 24-7
monitoring for their safety and the safety of the newborn.

7.  It is my business plan, in order to expand the business and be
    competitive and ensure quality standards, to finance and cause the
    construction of a much larger indoor breeding and training facility on
    the premises which will consist of storage areas, tack areas, feed and
    veterinarian supply storage, breeding stations and a large arena for the
    exercising and training of horses for eventual sale.

8.  As an adjunct to the expanded breeding facility, temporary labor in the
    form of H-2A workers will be required to provide the temporary labor
    demanded and such workers will need to be housed, particularly
    during the peak seasons of breeding and foaling (from January to
    August). Since under the H-2A program employers must provide
    housing for the agricultural workers, pursuant to the Department of
    Labor program, I have purchased and brought to the facility four
    mobile home housing units in order to provide the required housing. I
    have made application to the Department of Employment and Training
    of the Commonwealth of Massachusetts and the United States
    Department of Labor concerning the requisites of the H-2A program
    and am fully prepared to utilize such workers. In any event, use of the
    manufactured homes for housing is and will be an accessory use to the
    above-described farming activities and would not be used for rental
    property or to house individuals other than those who work for Aces
    Wild Farm. On site housing for H-2A workers is customarily
    incidental to agricultural business in the Commonwealth. Additionally,
    the use of farm workers in intensive seasonal agricultural pursuits is

prevalent in the Commonwealth and without the utilization of such workers, agricultural businesses in the Commonwealth do not thrive.

9.  Upon information and belief based upon documents provided to me by Jose Ocasio from the Massachusetts Division of Employment and Training, there are in excess of 106 farm labor camps in the Commonwealth of Massachusetts using migrant and H-2A workers incidental to agricultural business. Attached is an exemplar.

10. In addition to the volunteers and paid workers on the premises, it is anticipated from time to time in conjunction with the breeding, training and sale of the mares, stallions and foals that training clinics will be held on the premises.

11. I have attended the University of Vermont; major course of study including "Light Horse Management" and "Riding Instruction," and am licensed with the Commonwealth of Massachusetts Department of Food and Agriculture, Equine Affairs and Activities Division (1981 to current). I have been continuously involved in the horse industry since 1981 working with mentally and physically handicapped children; stable management; equestrian art instruction; the training and breeding of US quarter horse champions and have competed in national competitions consistently over the past 20 years and am affiliated with the following organizations: American Quarter Horse Association, Massachusetts Quarter Horse Association, Northeast Reining Horse Association, National Reining Association, Plymouth County Horse Leaders Advisory, Plymouth County FSA Committee, Plymouth County 4H Leaders, and Massachusetts Stable Owners, Operators and Instructors.

12. Attached hereto are true and accurate copies of the following documents:

(a.) A 3-page summary of nurse-mare services;

(b.) Subsurface sewage disposal plan for 59 Parsonage Street, Plympton, MA prepared by Grady Consulting L.L.C. registered professional civil engineers (2 pages);

(c.) Olympia Building Systems "1 page;"

(d.) Application for Certificate of Occupancy for a Farm Labor Camp from 7/12/03;

(e.) 7/14/03 Letter from Wild Aces to Board of Selectman regarding her Application for Farm Labor Camp;

(f.) Department of Public Health Report of Inspection;

(g.) Breeding Contract and Registration Certificates;

(h.) Letter from Jose Ocasio from the Massachusetts Division of Employment and Training dated 7/15/03;

(i.) Letter from Howard Wensley from the Executive Office of Health and Human Services; Department of Pubic Health; Division of Community Sanitation dated 7/14/03;

(j.) Housing Discrimination Complaint dated 9/17/03;

(k.) Town of Plympton Zoning Board of Appeals Notice of Decision;

(l.) 2004 Farm and Home Plan

(m.) Letter from Timothy M. Robison of the U.S. Department of Housing and Urban Development (HUD) regarding "Housing Discrimination Inquiry" dated 9/4/03;

(n.) Town of Plympton Board of Appeals Application for Appeal dated 6/26/03; and

(o.) Exemplar of farms with labor camps in the Commonwealth of Massachusetts.

Signed under the pains and penalties this _4th_ day of June 2004.

PATRICIA RENEE PINA



**The Commonwealth of Massachusetts**
**Executive Office of Health and Human Services**
**Department of Public Health**
**Division of Community Sanitation**
**305 South Street, Jamaica Plain, MA 02130-3597**
(617) 983-6761     (617) 983-6770 – Fax

**MITT ROMNEY**
GOVERNOR

**KERRY HEALEY**
LIEUTENANT GOVERNOR

**RONALD PRESTON**
SECRETARY

**CHRISTINE C. FERGUSON**
COMMISSIONER

## APPLICATION FOR CERTIFICATE OF OCCUPANCY
### FARM LABOR CAMP
#### M.G.L. c111, §128G

OWNER & ADDRESS: *Patricia Renee Pina dba*          ~~TRUST,~~

*Aces Wild Farm & Ranch*          ~~CORPORATION~~
          ~~PARTNERSHIP~~
OPERATOR, IF DIFFERENT *59 Parsonage Rd Plympton Ma 02367* INDIVIDUAL

NAME AND ADDRESS OF CAMP: *Aces Wild Farm & Ranch*
*59 Parsonage Road Plympton, Mass.*

IF YOU HOUSE WORKERS FOR OTHER FARMS, PLEASE LIST NAMES OF FARMS ON REVERSE SIDE OF THIS PAGE.

CONTACT PERSON: *Patricia Renee Pina*          PHONE NUMBER: *781-585-3243*

TYPE OF CROP: *Livestock*          FAX NUMBER: _____

NUMBER OF WORKERS TO BE HOUSED: *8 to 16*          E-MAIL: *Jrap8315@aol.com*

SOURCE OF WORKERS: *Local & Migrant workers from Dept.*

FIRST DATE OF ARRIVAL OF WORKERS: *TBA*          LENGTH OF STAY: *6 mos to 1 year*

DATE CAMP WILL BE READY FOR INSPECTION: *To be determined*

CAMP FACILITIES:     WATER SUPPLY:     PUBLIC: _____     PRIVATE: *Water well*
          SEWAGE DISPOSAL:     PUBLIC: _____     PRIVATE: *Septic - Title V*

I hereby apply for a Certificate of Occupancy of the premises for the year 2003 and agree to operate said farm labor camp in accordance with the requirements of Chapter III of the State Sanitary Code and of the provisions of Section 12G and 128H of Chapter 111, Massachusetts General Laws.

DATE: *7-12-2003*          SIGNED: *Patricia Renee Pina*

          TITLE: *owner/operator*

Please mail completed and signed application as soon as possible before the expected occupancy of the farm labor camp to:

MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH
DIVISION OF COMMUNITY SANITATION
305 SOUTH STREET, JAMAICA PLAIN, MA 02130



**Aces Wild Farm & Ranch**
Patricia Renee Pina
59 Parsonage Road
Plympton, MA 02367
(781) 585-3243
fax (781) 585-3891



July 14, 2003

Board of Selectmen
Town of Plympton
Plympton, MA 02367

**APPLICATION FOR FARM LABOR CAMP**

Dear Selectmen,

Per my filing with the State today and our last meeting at the Plympton Town Hall, please find enclosed copies of the application and copies of dated stamped filing with the Plympton Fire Department, Plympton Board of Health and Plympton Building Department for my farm Labor housing under the Massachusetts Department of Public Housing and the Massachusetts Department of Employment Training as required by Chapter 40 A section 3. I was told that I would have to write to the Selectmen. I would like a copy of all these documents to be forwarded to the Plympton ZBA and the Plympton town council.

Sincerely,

Patricia Renee Pina

Enclosures:







Inside every Diamond, there's a Diamond Duro Quarter horse.
Breeding, training, boarding and lessons for riders at any level
Horses for sale. Get your winner here!
www.aceswildfarm.com



# AQHA

## AMERICAN QUARTER
## HORSE ASSOCIATION

TO SPEED PROCESSING,
PLEASE RETURN THIS FORM
WITH ADDITIONAL INFOR-
MATION AT YOUR EARLIEST
CONVENIENCE.

June 12, 2003

Ctrl|Ln#: 18769487 1
Doc ID#:  6185968

PATRICIA-RENEE ALTAFFER-PINA
ACE'S WILD FARM & RANCH
59 PARSONAGE RD
PLYMPTON, MA 02367-1502

Cust ID: 2416876

Dear MEMBER:

We are writing with regard to the application for registration of your 2003 foal out of MISS BRIANNA  1991061.

No markings were drawn on the back of the registration application, nor was the box checked specifying that the horse has no markings.

If this horse has markings, please draw all of his actual white markings on all views of the enclosed diagram form and return it to our office.

If the horse has no markings, check here _____, sign in the space provided below and return this letter to our office.

Thank you for your time in this matter.  If you have any questions, please feel free to contact our office.

Signature of Owner of Foal: _____

Registration Department

Enclosure: Diagram Form

MKG007

P. O. Box 200 ▪ Amarillo, Texas ▪ 79168 ▪ 1600 Quarter Horse Drive ▪ Amarillo, Texas ▪ 79104
(806) 376-4811

Document Id : 6185968  MKG007

Name and Number of Dam : MISS BRIANNA   1991061   Year Foaled : 2003

On Diagrams Below, OUTLINE with Dark Solid
Lines ALL White Markings of Horse and Draw
All Scars and Brands (so that markings can be
traced onto Registration Certificate).

DRAW IN
HEAD MARKINGS

**(4)→  ←(3)   (1)→   ←(2)        (1)→   ←(2)   (4)→   ←(3)**

**Right Side View**

KNEE

HOCK

KNEE

ANKLE

ANKLE
PASTERN

PASTERN

R   Hind Legs   L        L   Fore Legs   R

**Left Side View**

KNEE

HOCK

ANKLE

ANKLE

PASTERN

PASTERN

L   Fore Legs   R        R   Hind Legs   L

DRAW IN
EVERY
WHITE AREA

**Rear View**

HOCK

KNEE

ANKLE

ANKLE

PASTERN

PASTERN

L   Hind Legs   R        L   Fore Legs   R

INDICATE ALL
DARK SPOTS
WITHIN WHITE
AREAS

**Front View**

KNEE

HOCK

ANKLE

ANKLE

PASTERN

PASTERN

R   Fore Legs   L        R   Hind Legs   L

American Quarter Horse Association
P. O. Box 200 • Amarillo, TX 79168
806-376-4811

I hereby certify this diagram to accurately describe the horse listed above.

Signature_____



## AMERICAN QUARTER HORSE ASSOCIATION

TO SPEED PROCESSING,
PLEASE RETURN THIS FORM
WITH ADDITIONAL INFOR-
MATION AT YOUR EARLIEST
CONVENIENCE.

*May 8, 2003*

*Ctrl/Ln#: 18715182 1*
*Doc ID#:  6110981*

*PATRICIA-RENEE ALTAFFER-PINA*
*ACE'S WILD FARM & RANCH*
*59 PARSONAGE RD*
*PLYMPTON, MA 02367-1502*

*Cust ID: 2416876*

*Dear MEMBER:*

*We are writing with regard to the application for registration of your 2003 foal out of SQUANTUM KEY       90 T0542052.*

*No markings were drawn on the back of the registration application, nor was the box checked specifying that the horse has no markings.*

*If this horse has markings, please draw all of his actual white markings on all views of the enclosed diagram form and return it to our office.*

*If the horse has no markings, check here _____, sign in the space provided below and return this letter to our office.*

*Thank you for your time in this matter.  If you have any questions, please feel free to contact our office.*

*Signature of Owner of Foal:  _____*

*Registration Department*

*Enclosure: Diagram Form*

*MKG007*



# AQHA

AMERICAN QUARTER
HORSE ASSOCIATION

TO SPEED PROCESSING,
PLEASE RETURN THIS FORM
WITH ADDITIONAL INFOR-
MATION AT YOUR EARLIEST
CONVENIENCE.

June 12, 2003

Ctrl/Ln#: 18769487 2
Doc ID#:  6185969

PATRICIA-RENEE ALTAFFER-PINA
ACE'S WILD FARM & RANCH
59 PARSONAGE RD
PLYMPTON, MA 02367-1502

Cust ID: 2416876

Dear MEMBER:

We are writing with regard to the application for registration of your 2003
foal out of DORLEAC          81 T0527279.

No markings were drawn on the back of the registration application, nor was
the box checked specifying that the horse has no markings.

If this horse has markings, please draw all of his actual white markings on
all views of the enclosed diagram form and return it to our office.

If the horse has no markings, check here _____, sign in the space provided
below and return this letter to our office.

Thank you for your time in this matter.  If you have any questions, please
feel free to contact our office.


Signature of Owner of Foal: _____


Registration Department


Enclosure: Diagram Form


MKG007

P. O. Box 200  ▪  Amarillo, Texas  ▪  79168  ▪  1600 Quarter Horse Drive  ▪  Amarillo, Texas  ▪  79104
(806) 376-4811

Document Id  :    6185969    ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    MKG007

Name and Number of Dam : DORLEAC    81 T0527279    Year Foaled : 2003

On Diagrams Below, OUTLINE with Dark Solid
Lines ALL White Markings of Horse and Draw
All Scars and Brands (so that markings can be
traced onto Registration Certificate).

DRAW IN
HEAD MARKINGS

**Right Side View**

HOCK    KNEE

ANKLE    ANKLE
PASTERN    PASTERN

R  Hind Legs  L    L  Fore Legs  R

**Left Side View**

KNEE    HOCK

ANKLE    ANKLE
PASTERN    PASTERN

L  Fore Legs  R    R  Hind Legs  L

**Rear View**

HOCK    KNEE

ANKLE    ANKLE
PASTERN    PASTERN

L  Hind Legs  R    L  Fore Legs  R

**Front View**

KNEE    HOCK

ANKLE    ANKLE
PASTERN    PASTERN

R  Fore Legs  L    R  Hind Legs  L

DRAW IN
EVERY
WHITE AREA

INDICATE ALL
DARK SPOTS
WITHIN WHITE
AREAS

American Quarter Horse Association
P. O. Box 200 • Amarillo, TX 79168
806-376-4811

I hereby certify this diagram to accurately describe the horse listed above.

Signature_____

## STALLION SERVICE CONTRACT
### (does not guarantee breeding until returned deposit)

This certifies _Theresa Hornsley_, herein referred to as Mare owner, has engaged one service to _Hollywood by Wright_ for the _2003_ season at $_1,000.00_ the following mare: Mare name _Whoa So Ole_ Reg. No. _____ Breed _AQHA_ Year foaled _____ Sire _Kaloma_ Dam _Simonofe non Ke pg_ Mare will be sent to farm: Date _2-1-2001_ (circle one) In Foal (last breeding date _____) Wet (foal born _____ Dry maiden. Please list all vaccinations given to mare and/or foal in the last 12 months _____. _Copy of record will be brought at time of Breeding_ Is mare insured? _____ Company _____ Pol.# _____ Phone _____ Please list any special instructions or medical history that may be helpful to us while your mare is in our care. _____

Aces Wild Farm, agent for the above named stallion, will herein be referred to as Breeder.
This service is engaged subject to the following:

1.  A booking fee $_338.00_ of the above fee is payable with this contract, and the balance of $_1,000.00_ Plus all unpaid expenses will be payable upon receipt of an invoice or when mare leaves the farm, whichever is first. The mare (and foal if applicable) shall be released only upon payment in full of outstanding invoices, including those from the attending veterinarian.

2.  In the case of rebreed, a non-refundable chute fee of $_-0-_ is payable with this contract and must be received by Breeder before any breeding or related procedures are performed on the mare. A rebreed will not be considered a rebreed unless any and all fees incurred in the previous season have been paid in full prior to the closing of said previous season.

3.  A photostatic copy of registration papers (both sides), a veterinarian's health certificate, worming, Immunization records, and a current Coggins test (within 6 months) shall accompany mare. If these Are not presented upon mare's arrival, the breeder shall have the attending veterinarian make proper Tests and evaluations at the Mare Owner's expense, and mare will not be bred until these test results Are in Breeders possession. Mare (and foal, if applicable) will be periodically vaccinated and wormed as deemed necessary by the attending veterinarian at Mare Owner's expense.

4.  The mare owner agrees that each mare offered for breeding shall be in sound breeding condition and Free from infection and disease. Any mare certified by the veterinarian not to be, in his opinion, in sound breeding condition shall not be bred. Mare owner may substitute another mare within same breeding season.

5.  The breeder agrees to diligently try and settle the above named mare and shall have sole discretion of Determining the best method of breeding such mare. If , however, the mare does not settle, the Breeder shall be held harmless. ~~There will be no guarantee of live foal for any mare leaving Aces Wild Farm before being checked 34 days safe in foal by the attending veterinarian.~~ _tg_

6.  Live Foal Guarantee. Live foal means the foal shall stand and nurse. It is understood that if the mare Proves barren, aborts her foal, or if the foal is stillborn, a return season will be guaranteed the following year only, providing proper notification is given. Proper notification is defined as follows: Written certification by a licensed veterinarian within seven days that the mare has slipped or produced a non-viable foal. Mare owner certifies that such abortion or death did not result from any act or omission of the Owner subsequent to the mare's departure from Aces Wild Farm. Booster Rhino-pneumonitis vaccinations must be administered as indicated by the individual drug manufacturer as the mare progresses through her pregnancy. Failure to do this will void the Live Foal Guarantee.

7.  The breeding season in force for this contract shall begin February 15th and close July 15th of the year dates on the contract.

8.  It is further agreed that should the above named stallion die or become unfit for service, or if the above named mare dies during the breeding season then the Mare Owner may substitute another mare ~~of breed the above named mare to another stallion owned or managed by Aces Wild Farm that is agreed to by both the Mare Owner and the Breeder~~ _tg funds to be returned_

9.  A breeder's certificate will be issued to Mare Owner after all expenses have been paid in full and upon notification of the birth of the foal.

10. Waiver of Liability. It is understood that the breeding farm, its owners, employees, and guests shall

11/3/03

# AFFIDAVIT

This is to confirm that I paid a $1,000 breeding fee to breed my mare "Whoa Is She" to Renee Dina's stallion "Hollywood By Night."

This breeding resulted in a foal born on March 16, 2003 named Shz hollywood material.

Enclosed please find her official papers issued by the American Quarter Horse Association.

Theresa Gormley
owner



**MASSACHUSETTS
DIVISION OF
EMPLOYMENT
AND TRAINING**

***The Commonwealth of Massachusetts***
***Division of Employment and Training***
***Employment Service Policy and Systems Department***
*19 Staniford Street, Boston, MA 02114*

July 15, 2003

Mrs. Patricia Rene Pina
Aces Wild Farm and Ranch
59 Parsonage Road
Plympton, MA 02367

Dear Mrs. Pina,

As per our conversation, I have included for your review a copy of the Massachusetts Housing and
Sanitation Standards and the U.S. DOL OSHA (Temporary Labor Camps) standards.

Please note that farm worker housing provided by an employer must meet minimum standards set by state
and federal law. In addition, farm labor camps must be inspected and certified before workers move in.

Federal and State standards specify requirements for:

- Housing site
- Shelter and housing
- Water supply
- Toilet facilities
- Sewage disposal
- Laundry, hand washing and bathing facilities
- Electrical safety and lighting
- Refuse and garbage disposal
- Cooking and eating facilities
- Screening, insect and rodent control
- Fire, safety and first aid procedures, equipment, and supplies
- Reporting of communicable diseases

Please feel free to contact me at (617) 626-5587 or (413) 452-4688 should you have any questions.

Sincerely,

Jose V. Ocasio
Employment Service, Policy
And Systems Department



**The Commonwealth of Massachusetts**
Executive Office of Health and Human Services
Department of Public Health
Division of Community Sanitation
305 South Street, Jamaica Plain, MA 02130-3597
(617) 983-6761      (617) 983-6770 - Fax

**MITT ROMNEY**
GOVERNOR

**KERRY HEALEY**
LIEUTENANT GOVERNOR

**RONALD PRESTON**
SECRETARY

**CHRISTINE C. FERGUSON**
COMMISSIONER

July 14, 2003

Patricia Pina
59 Parsonage Road
Plympton, Massachusetts  02367

Dear Ms. Pina:

Enclosed as per your request are the parameters that will need to be tested in order to approve your private well for use at a farm labor camp certified under the provisions of 105 CMR 420.000. If you have any questions please do not hesitate to contact this office.

Sincerely,

Howard S. Wensley, MS, CHO
Director

Enclosures

cc:  Plympton Board of Health



The Commonwealth of Massachusetts
Town of Plympton
Zoning Board of Appeals
Notice of Decision

By an application filed with the Town Clerk on June 30, 2003, Patricia Renee Pina appeals from the Building Inspector's denial of Ms. Pina's request for a building permit to install and use four mobile home/house trailers on her property at 59 Parsonage Road. Alternatively, if her appeal from the Building Inspector's decision is denied, Ms. Pina seeks a special permit to allow the use of the trailers to provide housing for agricultural workers who would be employed on her property.

A public hearing on the application was held on August 12, 2003, and was closed that same day. The following Zoning Board of Appeals members were present at the hearing: Stephen Mattern, chairman; William McClellan, member; and Edward Murray, alternate member (designated to sit in place of member Scott Sauchuk, who recused himself). Also present was Town Counsel John Goldrosen.

At the hearing, the Board heard testimony from Ms. Pina and asked her a number of questions to obtain information about the basis for her application. The Board also heard statements and received written submissions from town officials, members of the general public, and a legal representative of several abutters.

Facts

Based on the information submitted in the application and received at the hearing, the Board finds the following facts to be pertinent:

1.       Patricia Renee Pina operates Aces Wild Farm on approximately 36 acres at 59 Parsonage Road, Plympton. There she keeps approximately 30 horses, 30 sheep and a few goats. She also offers riding lessons. She grows no crops at present. She resides in a house on the property.

2.       Currently Ms. Pina's farm has no paid employees. She estimates that the present farm operation requires approximately 180 person-hours per week labor. She stated that she and a group of 6 to 10 'volunteers' currently perform this labor.

3.       Ms. Pina applied to the Building Inspector for a building permit for a trailer in August 2002. The Building Inspector verbally denied the permit on the basis that the trailer would violate the Zoning By-Law. Despite the denial, Ms. Pina moved a trailer onto her property that same month.

4.       In December 2002, Ms. Pina applied to the Building Inspector for a building permit for three more trailers, and again received a verbal denial. She moved the additional trailers onto her property in January–February 2003.

5.       In June 2003, Ms. Pina again applied to the building inspector for a building permit for the trailers that she had placed on her property, and was verbally denied. She thereafter filed this application with the Board.

6.       Two of the four trailers are two-bedroom units; the other two trailers are duplexes, with each duplex unit containing one bedroom. Therefore, the trailers contain a total of eight bedrooms.

7.       Ms. Pina submitted a sketch plan with her application. The plan indicates that the trailers would be located alongside and behind the existing barn on the property.

8.       Ms. Pina applied to the Board of Health in August 2002 for a permit to construct a septic system to serve the trailers. The percolation test was recently conducted, and an engineer is drawing up plans. Ms. Pina also plans to drill two new wells for water supply.

9.       Ms. Pina stated that the trailers would be used to house 8 to 12 workers who would be employed on her property. The workers would take care of the animals and do other work, such as maintaining fences, clearing brush, and turning over fields. Some of the resident employees would be seasonal, and others would be year-round. The "busy season" is January to August.

10.      Ms. Pina stated that she plans to construct a new building that would be 200 feet by 300 feet, and would cost $150,000. She estimated the cost of the planned septic system at $60,000 to $70,000. She also said that she planned to increase the number of animals and apple trees in the future.

11.      Ms. Pina has not applied for a permit for the new barn. She did not present any site plans to the Board for the new barn.

12.      On December 5, 2002 Ms. Pina submitted an application for Chapter 61A agricultural status to the Plympton Assessors. In that application she stated that her gross sales from agricultural use for the preceding year (2001) were $20,126.

13.      Testimony was received that other farms in the town with more horses and sheep are operated with few or no employees. Ms. Pina stated that her farm was operated differently, and that the need for the number of employees to be housed on the property was based on her plans to expand operations. She estimated that she needs one employee for every 10 horses.

14.      Although she stated that she made her entire living from agriculture and that the expanded operations would provide the cash flow to support the additional employees, Ms. Pina did not present any business plan or financial information to support her projections of the need for the employees and the means to pay for them.

15.      Ms. Pina has not recently attempted to locate employees by advertising positions or listing openings with the state employment office. She stated that she has filed a plan with the Department of Public Health to operate a farm labor camp. She stated that she plans to employ immigrant labor under the supervision of the Department of Employment and Training, and that she is required to provide housing under that program.

16.       Ms. Pina stated that the trailers would be used for new employees, not for the current volunteers, who would become paid employees and would continue to live off-site, as they do presently. The workers who are currently volunteers would provide more specialized labor, such as riding instruction.

17.       In response to testimony that cranberry growers in the town bring in workers on a daily basis by van rather than housing them on-site, Ms. Pina stated that she wanted to provide better housing to potential workers than they could obtain living in New Bedford or Brockton, and that the workers would have a better lifestyle if housed on-site.

18.       In response to a question as to whether it would be feasible to install apartments in the barn as an alternative to the use of trailers, Ms. Pina said that she would not want to do that, and that she did not think it would meet the building code.

A petition was presented to the Board, signed by 226 residents of the Town, opposing the application on the grounds that;

-The intent of the bylaw prohibits mobile homes except temporarily

-The mobile homes are in disharmony with the intent and purpose of the bylaw

-The use is not desirable and will decrease property values

-Detrimental effects outweigh any advantages

-There are alternatives that would be more in harmony such as an addition to barn

-The mobile homes are old decrepit and a blight to the area.

By-Law and Statutory Requirements

The Board considers the following provisions of the Zoning By-Law to be germane to Ms. Pina's appeal and special permit application:

Section 2.1 Enforcement

This Bylaw shall be enforced by the Zoning Enforcement Officer, who may be the Building Inspector. . . . No permit or license shall be granted for a building, structure, or land which use is in violation of this Bylaw.

Section 5 Intensity and Use Regulations (Introduction)

No more than one (1) dwelling shall be built upon any lot.

Section 6.3 Trailers and Mobile Homes

No mobile home or trailer shall be set upon private property in any district, for use as a dwelling, storage, sales or office space for a period of more than sixty (60) days except as authorized by special permit from the Board of Appeals.

For use as a temporary dwelling, Board of Health approval for sewage disposal and potable water supply must be obtained prior to occupancy.

This provision shall not prohibit the occupier of a residence destroyed by fire or natural holocaust from residing in a mobile home on the site for a period not to exceed twelve (12) months while the residence is being rebuilt.

No lot, parcel or tract of land in any district shall be used for the purposes of a commercial trailer coach park.

Section 7.2 Uses Authorized By Special Permit

Trailers: The Board of Appeals shall require full compliance with lot area and setback requirements of this By-law and such conditions deemed necessary and appropriate in granting such special permits. No special permit shall be granted for a period in excess of one (1) year. See also the requirements in Section 6.3

Section 7.1.1 Special Permit General Provisions

The special permit granting authority shall take into account the general purpose and intent of this By-law and in order to preserve community values, may impose conditions and safeguards deemed necessary to protect the surrounding neighborhood, in addition to the applicable requirements of this By-law...

Section 7.1.2

Special permits shall only be issued for uses which are in harmony with the

general purpose and intent of this By-law and subject to its general or specific provisions and only if the special permit granting authority finds that the following conditions are met:

The use is not noxious, harmful or hazardous, is socially and economically

desirable and will meet an existing or potential need.

The advantages of the propose use out-weigh any detrimental effects, and such detrimental effects on the neighborhood and the environment will not be significantly greater than could be expected from development which could occur if the special permit were denied.

The applicant has no reasonable alternative available to accomplish this purpose in a manner more compatible with the character of the immediate neighborhood.

This decision also involves the interpretation and application of M.G.L. c. 40A, s. 3, which reads in part:

No zoning ordinance or by-law shall regulate or restrict the use of materials, or methods of construction of structures regulated by the state building code, nor shall any such ordinance or by-law prohibit, unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture, horticulture, floriculture, or viticulture; nor prohibit, or unreasonably regulate,

or require a special permit for the use, expansion, or reconstruction of existing structures thereon for the primary purpose of agriculture...

Findings and Conclusions

1.      Ms. Pina contends in her application and testimony that she is entitled to an absolute right to house agricultural workers in the four trailers under the protection for agricultural uses and structures provided by M.G.L. c. 40A, s. 3, and that she therefore does not need a special permit and therefore is not subject to the requirements of the Zoning By-Law.   The Board finds that the statute establishes no absolute right to erect buildings to house agricultural workers. The statute specifically refers to *existing structures*, which these trailers are not. Also, in contrast to a barn or stable, which generally needs to be located on-site to serve an agricultural purpose, the connection between agricultural use and housing for agricultural workers is less direct. Housing does not necessarily have to be provided on the farm where the workers are employed, and not all agricultural workers live on-site. In order for the agricultural protection provision to prevail here, the buildings would have to have been pre-existing, and the need for the housing would have to have been demonstrated.

2.      In the case of a new structure that is ostensibly for agricultural purposes, the Supreme Judicial Court has held that the structure can be regulated by special permit, but:

"...only regulations that are reasonable may be permitted in order to assure no material diminution of the protection provided by § 3 for the continued use of agricultural land."

Prime v. Zoning Board of Appeals of Norwell, 45 Mass. App. Ct. 818 (1997).

3.      Placing four trailers on the property, which already has a house located on it, violates Section 5 of the By-Law, which prohibits more than one dwelling per lot.

4.      Section 6.3 requires a special permit from this Board for use of a trailer for more than 60 days, and Section 7.2 bars the Board from issuing a special permit for a trailer for more than one year.

5.      The By-Law allows trailers only under limited circumstances and for limited time periods. The Board concludes that the By-Law disfavors the use of trailers.

6.      Based on the intended use of the trailers and the high cost of installing a septic system to serve them, the Board concludes that the trailers are intended to be located on the property permanently (whether or not they are used on a year-round or seasonal basis).

7.      In addition to the restriction in Section 5 against more than one dwelling per lot, the Building Inspector was precluded from issuing building permits for the intended use of the four trailers on the property without a special permit first being issued by the Board. The Board therefore concludes that the Building Inspector correctly denied the permits sought for the four trailers. The Board therefore considers Mrs. Pina's alternative request for a special permit.

8.      In considering whether to grant a Special Permit for the use of the trailers, the Board applies the requirements for a Special Permit in the By-law, but bears in mind that it must also consider whether the regulations are reasonable as applied to the proposed use for agricultural worker housing. In doing so, the Board has considered the applicant's needs, balanced against the Town's legitimate concerns. The burden is on the applicant to prove that the requirements of the By-Law are unreasonable as applied to her project.

9.      Ms. Pina has not proven a need for having trailers on her property to house agricultural workers. She currently has "volunteers" who do not live on the premises (and would not live on the premises even if trailers were to be allowed), and she presumably has the option of hiring them as employees. She has not made any recent attempts to advertise for additional employees. Her gross sales of $20,126 for 2001 as reported to the Assessors is inadequate to support any employees, much less the 8 to 12 she proposes to house. Ms. Pina described (without presenting) expansion plans and a business plan for the farm, but did not substantiate that these plans are practical or financially feasible. The Board has not been provided with sufficient information to conclude those plans would be successful and therefore generate the need for additional farm labor, and the income to compensate them. Even if Ms. Pina were to be successful in creating a need for more employees and an ability to pay them, she has not shown that workers must necessarily be housed on the premises. Her existing workforce is not housed on-site, and members of the public testified that other farms in the area are served by workers who are not housed on the agricultural property. Her preference to house workers on-site, and her view that this would be higher quality housing than the workers could find elsewhere, does not establish that the housing is necessary to the agricultural enterprise. Therefore, she has not shown that denial of a special permit will effectively prohibit the agricultural use of the property, or that it would be unreasonable to apply the By-law's criteria for a special permit in her case.

10.     Even if there were a need to house agricultural workers on the property, Ms. Pina has not proven that use of trailers is the only feasible alternative. Ms. Pina did not present any evidence that she has evaluated or even considered other

options for structures that are not disfavored as trailers are, and that would be more in harmony with the neighborhood, such as an addition to the house on the property, renovation of the barn, or a separate building housing several apartments.

11.    Because the need to house agricultural workers has not been demonstrated, and the economic presumptions underlying the application are speculative, the Board is concerned that the trailers would ultimately be used to house persons other than on-site agricultural workers. A condition limiting the use of the trailers to on-site workers would be extremely difficult to enforce.

12.    In addition to failing to provide sufficient information to demonstrate a practical and economic need to house workers on-site, Ms. Pina did not provide the Board with the minimum site information required of all applicants. Only a small scale plan was submitted, with "preliminary proposed sites" for the trailers sketched in by hand. This is in violation of Paragraph 4 of the Board's Rules, which states: *All applications shall be accompanied by a plan of the land affected, drawn to a scale of 1"=40' or 1"=80', showing all monuments, structures, street lines, ways, and proposed structures or uses."* The sketch plan provides no information about the size of the trailers, provisions for parking, utilities, septic system, wells, lighting, setbacks, or topography. Without this information, the Board has no effective way to evaluate the impact of the structures or the adequacy of the site planning.

13.    The trailers are older models that, in color and style, are out of character with the existing residential and rural characteristics of the neighborhood and are aesthetically displeasing. As much as can be determined from the sketch plan, some of the trailers will be visible from the street. The applicant has not minimized the visual impact of the trailers by locating them further from the street or providing visual shielding through vegetation, fencing, or other means.

14.    The By-Law restricts the Board from issuing a special permit for a longer period than one year. The Board interprets the By-Law as intended to allow only temporary use of a trailer, such as during reconstruction of a dwelling damaged by fire (in which case, the trailer operates as the sole dwelling on the lot for the period of reconstruction).

15.    In effect, the proposed location of multiple trailers on the property would be equivalent to a commercial trailer park, which is prohibited in Section 6.3 of the By-law.

16.    A petition signed by 224 local residents (in a town of 2800) opposed to this proposal is a significant indication that the proposal is not socially or economically desirable, will have significant detrimental effects on the neighborhood and the community as a whole, and is not in harmony with the intent and purposes of the By-law. .

17.    The Board concludes that the By-law's restriction of one dwelling to a lot, and the limitation on the duration of a special permit for a trailer to no more than one year, are not unreasonable as applied to the proposal; further, that the requirements are based on legitimate municipal concerns, and that the applicant has not shown that applying these requirements has the effect of prohibiting an agricultural use or nullifying the protection afforded by c. 40A, s.3.

18.    In applying the criteria and requirements for a special permit, the Board concludes that:
(a) granting a special permit for the installation of four trailers on the property (even if the special permit were to be limited to less than one year) would not be in harmony with the purposes and the intent of the By-law, which disfavors trailers for residential use except in unusual circumstances.
(b) the installation of the trailers is not socially and economically desirable, and the applicant has not proven that it will meet an existing or potential need, insofar as the applicant has not proven a need to provide on-site housing for agricultural workers;
(c) the detrimental effects of the proposal on the neighborhood are considerable, in that the trailers are out of character with the appearance of the neighborhood, and those negative effects are not outweighed by any advantages of the proposal;
(d) if it were necessary to house agricultural workers on-site, reasonable alternatives are available to the applicant that would be more compatible with the character of the immediate neighborhood, such as additions to or modifications of existing structures, or a new structure more in character with the physical appearance of other dwellings than are the proposed trailers. The applicant has not considered these alternatives.

19.    The continued presence of the trailers on the property is in violation of the Zoning By-Law, and the enforcement of the By-Law is not precluded or pre-empted by the provisions of c. 40A, §3.

DECISION
The Board DENIES the applicant's appeal from the decision of the Building Inspector to deny building permits for the installation of the trailers on the property.
The Board DENIES the applicant's application for a special permit to allow the use of the trailers on the property.
An appeal from this decision may be made by any aggrieved person pursuant to Mass. General Laws Chapter 40A, Section 17 within twenty days after the date of the filing of this notice in the office of the Town Clerk.

Plympton Zoning Board of Appeals
Stephen Mattern, William McClellan, Edward Murray

## HOUSING DISCRIMINATION COMPLAINT

**CASE NUMBER:**  01-03-0417-8

1.    **Complainants**

     Patricia Pina
     59 Parsonage Road
     Plympton, MA  02367

2.    **Other Aggrieved Persons**

     None.

3.    **The following is alleged to have occurred or is about to occur:**

     Using ordinances to discriminate in zoning and land use.

4.    **The alleged violation occurred because of:**

     Race.

5.    **Address and location of the property in question (or if no property is involved, the city and state where the discrimination occurred):**

     59 Parsonage Road
     Plympton, MA  02367

6.    **Respondent(s)**

     Plympton, Town of
     Zoning Board of Appeals
     5 Palmer Road
     Plympton, MA  02367

     Fred Svenson, Building Inspector
     Town of Plympton
     5 Palmer Road
     Plympton, MA  02367

     Richard Springer, Selectmen
     Town of Plympton
     5 Palmer Road
     Plympton, MA  02367

     Christine Joy, Selectmen
     Town of Plympton
     5 Palmer Road
     Plympton, MA  02367

John C. Newburn, Selectmen
Town of Plympton
5 Palmer Road
Plympton, MA  02367

Stephen Mattern, Chairman
Town of Plympton Zoning Board
5 Palmer Road
Plympton, MA  02367

William McClellan
Town of Plympton Zoning Board
5 Palmer Road
Plympton, MA  02367

Edward Murray
Town of Plympton Zoning Board
5 Palmer Road
Plympton, MA  02367

7.  **The following is a brief and concise statement of the facts regarding the alleged violation:**

The complainant alleges that the respondents have discriminated against her on the basis of race (Cape Verdean/Black) by using the Town's ordinances and By-Laws to discriminate in zoning and land use.  The particulars are as follows:

The complainant alleges that the respondents have violated her civil rights, as a farmer, to set up and operate a farm labor camp by refusing to permit the use of mobile homes/trailers on her farm for use as affordable housing for her farm employees. The complainant alleges that there are two other farmers in the town of Plympton, both White Americans, that have mobile homes in use on their farms (one located at 114 Center St. and the other located at 67-69 Brook St.), and further alleges that the Plympton Board of Assessors' records show that both farmers own and are taxed for mobile homes placed on their farms for farm use.

By application dated June 30, 2003, the complainant filed an appeal from the Building Inspector's denial of her request for a building permit to install and use four mobile home/house trailers on her property to provide housing for agricultural workers who would be employed on her property.  On August 12, 2003 a hearing was held before the Zoning Board of Appeals and the appeal was denied. The complainant believes that her civil rights have been violated, on the basis of her race, under the Fair Housing Laws.

8.  **The most recent date on which the alleged discrimination occurred:**

August 12, 2003, and is continuing.

9.   Types of Federal Funds identified:

None.

10.   The acts alleged in this complaint, if proven, may constitute a
violation of the following:

Section 804a/b or f of Title VIII of the Civil Rights Act of 1968
as amended by the Fair Housing Act of 1988.

Please sign and date this form:

I declare under penalty of perjury that I have read this complaint
(including any attachments) and that it is true and correct.

_____Patricia Pina_____          9-17-2003
Patricia Pina                            (Date)

N O T E :   HUD WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR
ORGANIZATION AGAINST WHOM IT IS FILED.

FSA-431-2
(03-25-90)

USDA-Farm Service Agency

NAME  ASSOCIATE BORROWER(S)
Patricia Phelps-Pina

Social Security or TAX ID NO.
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

Telephone Number

# FARM AND HOME PLAN

| Ages of Persons in Household | Applicant | Spouse | Sons | Daughters | Others |
|---|---|---|---|---|---|
| | | | | | |

| PERIOD COVERED BY PLAN: | From: 01/01/2004 | Thru: 12/31/2004 | DATE OF BALANCE SHEET 01/01/2002 | ACRES OWNED TOTAL (0.00) CROP (0.00) |
|---|---|---|---|---|

## A. BALANCE SHEET

| CURRENT FARM ASSETS | | | $ Value | CURRENT FARM LIABILITIES | | | | $ Amount |
|---|---|---|---|---|---|---|---|---|
| Cash: (25) Checking: (1,500) Savings: (25) | | | 1,550 | Farm Accounts and Notes Payable (Include P & I) | | | | |
| Other Investments: Time Certs (0) Others (0) | | | | | Payment Due Date | Interest Rate | Monthly or Annual Installment | |
| Accounts and Notes to be Received (Receivables) | | | 18,000 | Creditor | | | | |
| Crops and Feed | Units | Price Per Unit | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Livestock to be Sold | No. | Unit Weight | Price Per Unit | | | | | |
| horses | 2 | 1.00 | 7,500.00 | 15,000 | | | | |
| | | | | | CCC Loan: Type( ) Qty.( 0 ) Due Date( ) | | | 0 |
| | | | | | Current Portion of Principal Due on: | | | |
| | | | | | Intermediate Liabilities: | | | 4,258 |
| | | | | | Long Term Liabilities: | | | 10,739 |
| | | | | | Accrued Interest on: | | | |
| Growing Crops | Acres | Cost/Acre | | | Intermediate Liabilities: | | | 0 |
| | | | | | Long Term Liabilities | | | 0 |
| | | | | | Accrued Taxes on: | | | |
| | | | | | Real Estate, Personal Property and Assessments: | | | 0 |
| Supplies and Prepaid Expenses | | | 1,100 | Income Tax and Social Security | | | | 0 |
| Leases | | | | Accrued Rent/Lease Payments | | | | 0 |
| Other | | | | Other (judgements, liens, etc.) | | | | 0 |
| TOTAL CURRENT FARM ASSETS | | | 35,650 | TOTAL CURRENT FARM LIABILITIES | | | | 14,997 |

| INTERMEDIATE FARM ASSETS | | | | INTERMED. FARM LIAB. (portion due beyond 12mos.) | | | | |
|---|---|---|---|---|---|---|---|---|
| Accounts and Notes to be Received beyond 12 mos. (Receivables) | | | 0 | | Payment Due Date | Interest | Amount Delinquent | |
| Breeding Livestock | No. | Price Per Unit | | Creditor | | | | |
| goats female | 2.00 | 75.00 | 150 | Farm Service Agency | 02/05/2002 | 3.7500 | | 40,337 |
| Horses - Stallions | 4.00 | 7,000.00 | 28,000 | Farm Service Agency | 02/20/2002 | 5.0000 | | 13,634 |
| HORSES-Mares | 10.00 | 10,000.00 | 100,000 | | | | | |
| | | | | | | | | |
| Machinery, Equipment and Vehicles | | | 6,400 | | | | | |
| Co-op Stock | | | | | | | | |
| Cash Value, Life Insurance Face Amount (0) | | | | Loans Secured by Life Ins | | | 0 | |
| FOR: Type( ) Qty.(0.00) Price/Unit(0.00) | | | | Farmer-Owned Reserve | | | | |
| Other | | | | Other | | | 0 | |
| TOTAL INTERMEDIATE FARM ASSETS | | | 134,550 | TOTAL INTERMEDIATE FARM LIABILITIES | | | | 53,971 |

| Acres | Date Bought | Annual Tax. | Cost | | LONG TERM FARM LIAB. ( portion due beyond 12 mos ) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 36.50 | 1997 | 4,000 | 285,000 | 529,000 | Creditor | Payment Due Date | Interest Rate | Amount Delinquent | |
| | | | | | Farm Service Agency | 12/29/2002 | 5.0000 | | 239,019 |
| | | | | | Refinanced real esta | 12/31/2002 | 10.7500 | | 128,285 |
| Co-op Stock | | | | | Rural Development | 12/31/2002 | 1.0000 | | 8,718 |
| Equity in Partnerships/Corporations/Joint Operations/Cooperatives | | | | | | | | | |
| Other | | | | 100,000 | Other | | | | |
| TOTAL LONG TERM FARM ASSETS | | | | 629,000 | TOTAL LONG TERM FARM LIABILITIES | | | | 376,022 |
| TOTAL FARM ASSETS | | | | 799,200 | TOTAL FARM LIABILITIES | | | | 444,990 |

*See last page for Privacy Act and Public Burden Statements*


Typed year
(2004)

## A. BALANCE SHEET (continued)

| NONFARM ASSETS | $ AMOUNT | NONFARM LIABILITIES | | | | | $ AMOUNT |
|---|---|---|---|---|---|---|---|
| Household Goods | 8,000 | Nonfarm Accounts and Notes Payable | | | | | |
| Car, Recreational Vehicles, etc. | 2,000 | Creditor | Payment Due | Interest Rate | Monthly or Annual | | |
| Cash Value of Life Insurance | 0 | | | | | | |
| Stocks, Bonds | 0 | Rockland Trust | 03/18/2002 | 18.0000 | 276 | | 800 |
| Nonfarm Business | 10,000 | Sallie Mae | 02/28/2002 | 8.2500 | 9,536 | | 87,322 |
| Other Nonfarm Assets | 0 | | | | | | |
| Nonfarm Real Estate Annual Tax ( 0 ) | 0 | | | | | | |
| TOTAL NONFARM ASSETS | 20,000 | TOTAL NONFARM LIABILITIES | | | | | 88,122 |
| TOTAL FARM ASSETS | 799,200 | TOTAL FARM LIABILITIES | | | | | 444,990 |
| TOTAL ASSETS | 819,200 | TOTAL LIABILITIES | | | | | 533,112 |
| | | NET WORTH | | | | | 286,088 |
| | | TOTAL LIABILITIES AND NET WORTH | | | | | 819,200 |

The above information is furnished for the purpose of securing and maintaining credit and is certified to be complete and correct. The undersigned authorizes the FSA to make all inquiries deemed necessary to verify the accuracy of the information contained above to determine my credit-worthiness and to answer questions about their credit experience with me. I agree to notify FSA promptly to any material changes to the above. I recognize that making any false statements on this Farm and Home Plan or any other loan document may constitute a violation of criminal law.

| Signature of Applicant/Borrower/Entity Member | Date |
|---|---|

## CLOSING OF PRESENT YEAR'S BUSINESS AND CHANGE IN NET WORTH

| A1. Enter all cash on hand, farm income, and non-farm income to be received before the period covered by the new plan begins. (ITEMIZE) | INCOME $ AMOUNT | A2. Enter all debts and expenses that will be paid from the income itemized in A1 before the period covered by the new plan begins. (ITEMIZE) | DEBT & EXPENSE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL INCOME TO BE RECEIVED | | TOTAL EXPENSES TO BE PAID | |

A3. The Total Income to be Received minus the Total Expenses to be Paid determines Planned Beginning Cash for next year's operation. ENTER THE AMOUNT OF LINE A3 IN TABLE J, LINE 11 PLANNED COLUMN (Beginning Cash).

| | | Change in Net Worth |
|---|---|---|
| A4. Net Worth (Total Property Owned Minus Total All Debts) | 286,088 | -286,088 |
| A5. Total Land Debt | 285,596 | |
| A6. Total Debts Other Than Land | 247,516 | |

## B. RENTAL AND LEASE INFORMATION

| General Description or Farm | Landlord | Acres | | Type of Lease | Crop Share | Cash Rent | Expiration Date |
|---|---|---|---|---|---|---|---|
| | | Total | Crop | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | | 0.00 | 0.00 | | Total Cash Rent | | |

| Other Items - Descriptions | Owner | No. of Units | Type of Lease | Crop Share | Payment | Expiration Date |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

## C. IMPROVEMENTS AND KEY PRACTICES - FARM , HOME AND FINANCIAL MANAGEMENT

| Crops; Soil; Livestock; Financial Management; Maintenance; Repairs; Food Production and Conservation; Health,Home, Environmental,Community and Rural Development Activities, Etc. | Planned Time to Accomplish | Source of Funds | Actual Accomplishments |
|---|---|---|---|
| Feed good quality hay | ongoing | | |
| Removing wild cherry trees | 2002 | N/A | |
| Clearing more land | 2002 | N/A | |
| Comply with FSA programs | ongoing | | |
| | | | |
| | | | |

*(To be completed by Farm Loan Manager) An analysis of this operation will be completed by the Farm Loan Manager or designee during the month of:* _____

NOTE: The Planned Improvements and Key Practices should be a joint effort planned and agreed upon by both The Operator and The Farm Loan Manager or designee.

## D. - CROPS, PASTURE, ETC. - PRODUCTION, SALES, AND USE

| Crops, Pasture, Subsidy Payments, etc. | Acres | Yield Per Acre | Operator's Share — Units For: Farm Use | Hold For Sale | Sale | @ | Dollar Sales | Acres | Yield Per Acre | Operator's Share — Units: Farm Use | Hold For Sale | Sold | @ | Cash Income |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **Planned** | | | | | | | **Actual** | | | | |
| 1. IMPROVED PASTURE | 12.0 | | | | | | | | | | | | | |
| 2. APPLES | 2.0 | 30.00 | | | 60 | 2.0000 | 120 | | | | | | | |
| 3. OTHER CROPS | | | | | 150 | 1.0000 | 150 | | | | | | | |
| 4. | | | | | | | | | | | | | | |
| 5. | | | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | |
| 8. | | | | | | | | | | | | | | |
| 9. | | | | | | | | | | | | | | |
| 10. | | | | | | | | | | | | | | |
| 11. | | | | | | | | | | | | | | |
| TOTAL (ENTER IN TABLE J, LINE 1) | 14.0 | *Denotes double-cropped production items | | | | | 270 | 0.0 | | | | | | 0 |

## E. - LIVESTOCK/DAIRY/POULTRY AND PRODUCTS - PRODUCTION, SALES AND USE

| Livestock/Dairy/Poultry and Products Subsidy Payments, etc. | No. | Production per Animal | Operator's Share — Units For: Farm Use | Hold For Sale | Sale | @ | Dollar Sales | No. | Production per Animal | Operator's Share — Units: Farm Use | Hold For Sale | Sold | @ | Cash Income |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **Planned** | | | | | | | **Actual** | | | | |
| 1. HORSES | 2 | 1.00 | | | 2 | 7,500.0000 | 15,000 | | | | | | | |
| 2. HORSES | 10 | 1.00 | | | 10 | 3,750.0000 | 37,500 | | | | | | | |
| 3. OTHER EQUINES | 14 | 1.00 | | | 14 | 4,200.0000 | 58,800 | | | | | | | |
| 4. OTHER EQUINES | 92 | 1.00 | | | 92 | 30.0000 | 2,760 | | | | | | | |
| 5. OTHER EQUINES | 12 | 1.00 | | | 12 | 1,500.0000 | 18,000 | | | | | | | |
| 6. OTHER EQUINES | 40 | 1.00 | | | 40 | 60.0000 | 2,400 | | | | | | | |
| 7. OTHER EQUINES | 8 | 24.00 | | | 192 | 60.0000 | 11,520 | | | | | | | |
| 8. | | | | | | | | | | | | | | |
| 9. | | | | | | | | | | | | | | |
| 10. | | | | | | | | | | | | | | |
| 11. | | | | | | | | | | | | | | |
| TOTAL (ENTER IN TABLE J, LINE 2) | | | | | | | 145,980 | | | | | | | 0 |

## F. CASH FAMILY LIVING EXPENSES

| | Other Credit Needed | FSA Credit Needed | Planned Expenses | Actual Expenses |
|---|---|---|---|---|
| Household Operating | | | 1,992 | |
| Food (Including Lunches) | | | 1,056 | |
| Clothing and Personal Care | | | 100 | |
| Health Care and Insurance | | | | |
| House Repair and Sanitation | | | | |
| School and Recreation | | | | |
| Church and Charitable Contributions | | | | |
| Personal Insurance and Taxes | | | | |
| Transportation (Incl Pers Auto) | | | | |
| Furniture and Other | | | | |
| Other(See Attachment for Detail) | | | | |
| **TOTAL** | | | 3,148 | |

## H. CAPITAL AND CARRY-OVER EXPENSES

| | Other Credit Needed | FSA Credit Needed | Planned Expenses | Actual |
|---|---|---|---|---|
| Capital Sales | | | | |
| (See Attachment for Detail) | | | | |
| Capital Expenses | | | | |
| (See Attachment for Detail) | | | | |
| Debts Refinanced (Table A) | | | | |
| Carry-over Expenses | | | | |
| (See Attachment for Detail) | | | | |
| (2 plus 3 plus 4 minus 1) **TOTAL** | | | | |

## G. CASH FARM OPERATING EXPENSES

| | Other Credit Needed | FSA Credit Needed | Planned Expenses | Actual Expenses |
|---|---|---|---|---|
| Labor Hired | | | | |
| Machinery Repair | | | | |
| Farm Building and Fence Repair | | | | |
| Interest | | | 19,565 | |
| Rent or Lease | | | | |
| Feed Purchased | | | 36,000 | |
| Seeds and Plants Purchased | | | | |
| Fertilizers and Lime | | | 2,000 | |
| Chemicals | | | | |
| Livestock Expenses (Including | | | 3,000 | |
| Custom Hire (Machine Work) | | | 80 | |
| Gasoline, Fuel and Oil | | | 160 | |
| Taxes | | | 3,986 | |
| Water Charges | | | | |
| Insurance (Other than Personal) | | | | |
| Utilities | | | 1,000 | |
| Supplies Purchased | | | | |
| Other (See Attachment for Detail) | | | 19,648 | |
| Current Operating Bills (Table A) | | | | |
| **TOTAL** | | | 85,429 | |

## I. CREDIT FOR:

| | Other | FSA | Planned | Actual |
|---|---|---|---|---|
| Family Living (Table F) | | | | |
| Farm Operating (Table G) | | | | |
| Capti & CO Exp (Table H) | | | | |
| CCC Loan(s) | | | | |
| **TOTAL** | 0 | | 0 | 0 |

## J. SUMMARY OF YEAR'S BUSINESS

| | Planned | Actual |
|---|---|---|
| 1. Crop Income (Table D) | 270 | |
| 2. Livestock Income (Table E) | 145,980 | |
| 3. Other Farm Income | 7,275 | |
| 4. Total Cash Farm Income (1, 2 and 3) | 153,525 | |
| 5. Cash Farm Operating Expense (Table G) | 85,429 | |
| 6. Net Farm Cash Income (4 - 5) | 68,096 | |
| 7. Non-farm Income | 38,808 | |
| 8. Total Net Cash Farm and Non-farm Inc (6 + 7) | 106,904 | |
| 9. Cash Family Living Expenses (Table F) | 3,148 | |
| 10. Net Cash Income (8 - 9) | 103,756 | |
| 11. Beg Cash (Page 2, Line A3, or Phys Cnt) | | |
| 12. Loans and Other Credit (Table I) | | |
| 13. Interest (Table G) | 19,565 | |
| 14. Total Available (10, 11, 12 and 13) | 123,321 | |
| 15. Capital and Carry-over Expenses (Table H) | | |
| 16. Balance Available (14 - 15) | 123,321 | |
| 17. Gross Cash Income (4 + 7) | 192,333 | |

## K. DEBT REPAYMENT

| To Whom Owed | Amount Due this Year | Principal and Interest | Date | Source of Funds | Actual Amount Paid |
|---|---|---|---|---|---|
| Farm Service Agency 41-05 | 13,884 | 1 | 12/29/2002 | | |
| Farm Service Agency 43-06 | 2,722 | 1 | 02/05/2002 | | |
| Farm Service Agency 44-07 | 1,536 | 1 | 02/20/2002 | | |
| Refinanced real estate from PI | 19,200 | 21,242 | 12/31/2002 | | |
| Rockland Trust | 276 | 276 | 03/18/2002 | | |
| Rural Development | 585 | 585 | 12/31/2002 | | |
| Sallie Mae | 9,536 | 9,536 | 02/28/2002 | | |
| INCOME AND SOC SEC TAXES | | | | | |
| **TOTAL** | 47,739 | 31,642 | | | |

*I agree to follow this plan and to discuss with the Farm Loan Manager any important changes that may become necessary. This is a projected plan and does not release the security interest of the government in any security referred to in this plan. "I recognize that making any false statement on this Farm and Home plan or any other loan document may constitute a violation of federal criminal law"*

| Signature of Applicant/Borrower | Date |
|---|---|
| Signature of Farm Loan Manager | Date |

**NOTE:** *The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 USC 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agirculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act (FOIA), to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including your Social Security Number or Federal Tax Indentification Number, may result in a delay in the processing of an application or its rejection.*

## Public Burden Statement Required by the Paperwork Reduction Act of 1995

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0154. The time required to complete this information collection is estimated to average 2 1/2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

## Non Discrimination Statement

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice or TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.*



**U.S. Department of Housing and Urban Development**
Office of Fair Housing and Equal Opportunity
Thomas P. O'Neill, Jr. Federal Building
10 Causeway Street
Boston, Massachusetts 02222-1092

New England

September 4, 2003

Patricia Pina
59 Parsonage Rd.
Plymouth, ME 02367

**Subject: Housing Discrimination Inquiry**

Inquiry No. 157580

This letter is to acknowledge receipt of your inquiry.

We are reviewing this matter and will contact you as soon as possible. Please keep this office advised of any changes in your telephone number and/ or address.  If you have any questions please contact Marsha Jones at 1-800-827-5005.  Our TDD number is (617) 565-5453.

Sincerely,

Timothy M. Robison, Chief
Intake/ Assessment Branch
Office of Fair Housing and
Equal Opportunity

# TOWN OF PLYMPTON

# BOARD OF APPEALS



### APPLICATION FOR (CHECK ONE):
### VARIANCE ___
### SPECIAL PERMIT ___
### APPEAL  X
### COMPREHENSIVE PERMIT ___

**DATE**

6-26-2003

**NAME OF APPLICANT**

*Patricia Renee Pina*
*Acas Wild Farm & Ranch*

**RECEIVED BY TOWN CLERK:**

# RECEIVED

JUN 3 0 2003  7:30 p. M

Town Clerk's Office
Plympton

**CASE NUMBER:**

# TOWN OF PLYMPTON  BOARD OF APPEALS
## APPLICATION

THIS IS AN APPLICATION FOR: (COMPLETE ONLY ONE OF THE FOLLOWING):

1. A VARIANCE FROM SECTION _____ OF THE ZONING BYLAW FOR _____

2. A SPECIAL PERMIT UNDER SECTION _____ OF THE ZONING BYLAW FOR _____

3. AN APPEAL OF A ZONING RULING BY THE BUILDING INSPECTOR OR PLANNING AGENCY,
DATED _Numerous dates_, (A COPY OF WHICH MUST BE ATTACHED)
_Verbal Denial on the following dates 8/19/02 – 12/3/02/ – 6/26/03_
4. A COMPREHENSIVE PERMIT APPLICATION FOR LOW OR MODERATE INCOME HOUSING UNDER MGL CHAPTER 40B _____

DATE _6-26-2003_

NAME OF APPLICANT _Patricia Renee Pina Dba: Aces Wild Farm & Ranch_

NAME OF PROPERTY OWNER (IF A CORPORATION OR TRUST, ALSO GIVE NAMES OF

BENEFICIAL OWNERS) _Patricia Renee Pina & Pac LLC_

ADDRESS OF APPLICANT FOR PUBLIC HEARING NOTICE _59 Parsonage Rd Plympton, MA_

PHONE _781-585-3243_    E-MAIL _Use regular mail_

PROPERTY LOCATION: ASSESSOR'S MAP # _C 2_    LOT # _3_

STREET ADDRESS OR MEASUREMENT FROM KNOWN POINT _59 Parsonage Rd_

LOT AREA _46 acres_  FRONTAGE _1024.6_  DEPTH _3342.85_

APPLICANT'S INTEREST IN LAND WAS ACQUIRED ON (DATE) _1997_
FROM _Marjorie Wiseman_

COMPLETE STATEMENT OF NATURE OF THIS APPLICATION (MAY BE ATTACHED):

_I request a Special permit for 4 mobile homes to be used for farm housing for my employees under Chapter 40 A3 of Mass. General Law._

NAMES AND ADDRESS OF ABUTTERS (MAY BE ATTACHED)

_Please find attached_

A HEARING IS REQUESTED IN THE ABOVE MATTER:

APPLICANT'S SIGNATURE _Patricia Renee Pina_  DATE _6-26-2003_




**Aces Wild Farm & Ranch**
**Patricia Renee Pina**
**59 Parsonage Road**
**Plympton, MA 02367**
**(781) 585-3243**
**fax (781) 585-3891**

Richard Bowen Esg.                                                    June 27, 2003
John Goldrosen, Esq.
Kopelman and Paige
31 St James Avenue
Boston, Ma. 02110
617-556-0007
Fax 617- 654-1735

Re: Plympton, Aces Wild Farm & Ranch

Dear Attorney Bowen and Goldrosen:

Per our conversation and meeting at town hall yesterday. The Building Inspector, Zoning enforcement officer, Fred D Svenson told me when I went to file for the permit that I had to remove the trailers from my property with in 60 days of being placed on my farm property per the Town of Plympton Zoning By-laws.

I applied for building permits for the four mobile home on the following dates.

1. August 19, 2002 I was verbal denied and the Inspector, Zoning enforcement, Fred D Svenson, threw the application in the trash in front of me.
2. December 02, 2002 I was verbal denied and the Inspector, Zoning enforcement, Fred D Svenson, threw the application in the trash in front of me.
3. June 26, 2003 I was verbal denied and the application was thrown in the trash in front of me by the Inspector, Zoning enforcement, Fred D Svenson

I understood from the conversation with Town Counsel " stated that farm owner had to apply to the town for a permit within 60 days of being on the property. I agreed that day to file immediately and again was told that I had to remove the trailers. This letter will sever as the notice alone with my copies of the building permits as my letter to be used in the Appeal of Zoning Ruling by the Building Inspector, I was never given or mailed written denied on any of the three applications which I tried to file with the Inspector, Zoning enforcement, Fred D Svenson

Inside every Diamond, there's a Diamond Duro Quarter horse.
Breeding, training, boarding, and lessons for riders at any level
Horses for sale. Get your winner here!
www.aceswildfarm.com






**Aces Wild Farm & Ranch**
**Patricia Renee Pina**
**59 Parsonage Road**
**Plympton, MA 02367**
**(781) 585-3243**
**fax (781) 585-3891**

I will file the appeal with the Town Zoning Board of Appeals on Monday June 30, 2003 under section number three of Board of Appeals rules. I feel that at this point the regulations and bylaws call for a written denial in order to protect my agricultural rights as a farmer under Chapter 40A section 3. Now that the trailers are on the property, the challenge has started, and there have been several Town Meetings with hostile towns people about the subject of my agricultural exemption I believe that I would be giving up my important rights by volunteering to now file for a Special Permit. However, if the ZBA gives me one after appeal from the Building Inspector that will be viewed in a different manner under Chapter 40A section 3 of the Mass. General Law

Sincerely

Patricia Renee Pina
Patricia Renee Pina

Memorandums attached
cc: Boston Globe
Halifax Reporter
Patriot Ledger
Town of Plympton



Inside every Diamond, there's a Diamond Duro Quarter horse.
Breeding, training, boarding, and lessons for riders at any level
Horses for sale...Get your winner here!
www.aceswildfarm.com





P.O. Box 239
Plympton MA 02367

(781) 585-2700
FAX: (781) 585-2700

**TOWN OF PLYMPTON**
*Commonwealth of Massachusetts*
OFFICE OF THE BOARD OF SELECTMEN

## MEMORANDUM

TO:       Building Inspector/Zoning Enforcement Officer and BOH

FROM:    BOS

DATE:    June 26, 2003

RE:       Meeting update 6/26/03

Rich Bowen and John Goldrosen from Kopelman & Paige were present to discuss the trailers on property owned by Ms. Pina on Parsonage Road. Mr. Goldrosen informed the Board that the proper course of events is for Ms. Pina to apply for a special permit through the Zoning Board of Appeals.

The Board will inform the Zoning Enforcement Officer, Fred Svenson, to send Ms. Pina a letter stating the trailers must be removed from her property within 60 days of being placed on the property per the Zoning By-laws.

Ms. Pina informed the Board she will apply for a special permit with the Zoning Board of Appeals immediately.



**Aces Wild Farm & Ranch**
Patricia Renee Pina
59 Parsonage Road
Plympton, MA 02367
(781) 585-3243
fax (781) 585-3891



June 26, 2003

Board of Selectmen
Town of Plympton
Plympton, MA 02367

**Special Permit for the 4 Mobile Homes**

Dear Selectmen:

Per our meeting this morning, I will come in to Town Hall as soon as possible to fill out additional Special Permits with Mr. Fred D. Svension , the Plympton Building Inspector and Zoning Enforcement Officer.  As I stated today I will file for the Special Permit for the other three trailers. I will further continue to work with the Plympton Board of Health on the septic system and design of the farm expansion plans under construction at this time. However, under Chapter 40A the four mobile homes are exempt from the Plympton town by-laws as they stand to date.

Sincerely,

Patricia Renee Altaffer-Pina





Inside every Diamond, there's a Diamond Duro Quarter horse.
Breeding, training, boarding, and lessons for riders at any level
Horses for sale. Get your winner here!
www.aceswildfarm.com





**Aces Wild Farm & Ranch**

**Patricia Renee Pina**

**59 Parsonage Road**

**Plympton, MA 02367**

**(781) 585-3243**

**fax (781) 585-3891**



Richard Bowen Esq.
John Goldrosen, Esq.
Kopelman and Paige
31 St James Avenue
Boston, Ma. 02110
617-556-0007
fax 781- 654-1735

Re: Plympton, Aces Wild Farm & Ranch

Dear Attorney Bowen

　　Per our conversation and meeting at town hall today. The Building Inspector, Zoning enforcement officer, Fred D Svenson told me today when I went to file for the special permit that I had to remove the trailers from my property with in 60 days of being placed on my farm property per the Town of Plympton Zoning By-laws. I understood from the conversation with Town Counsel " stated that farm owner had to apply to the town for a special permit within 60 days of being on the property. I agreed to file that day immediately and again was told that I had to remove the trailers. Again I feel that you should take a look at the MGL Chapter 40A I will not under any conditions remove the mobile homes from my farm without a court order at this time.

Sincerely

*Patricia Renee Pina*

Patricia Renee Pina

6/26/03

Memorandum Attached
cc: Boston Globe
Halifax Reporter
Patriot
Town of Plympton



**Inside every Diamond, there's a Diamond Duro Quarter horse.**
**Breeding, training, boarding, and lessons for riders at any level**
**Horses for sale. Get your winner here!**
**www.aceswildfarm.com**



# TOWN OF PLYMPTON

## APPLICATION TO CONSTRUCT, REPAIR, RENOVATE OR DEMOLISH ANY BUILDING OTHER THAN A ONE OR TWO FAMILY DWELLING

---

### This Section For Official Use Only

Building Permit Number : _____    Date Issued: _____

Date : _____

Signature: _____
Building Commissioner / Inspector of Buildings

---

### SECTION 1 - SITE INFORMATION

Property Address: _59 Parsonage Rd Plympton_

Assessors Map & Lot Number:    Map_C 2_    Lot_3_

Proposed Use_4 trailers for farm housing_

Zoning Information:    Zoning District_____

Frontage (ft)_____

Property Dimensions:    Lot Area (sf)_____

Building Setbacks (ft):

| | Front Yard | | Side Yards | | Rear Yard | |
|---|---|---|---|---|---|---|
| Required | _____ | Provided _____ | Required _____ | Provided _____ | Required _____ | Provided _____ |

Water Supply:    Public_____    Private: _____

Flood Zone Information:    Zone: _____    Outside Flood Zone: _____

Sewerage Disposal System:    Municipal_____    On Site Disposal System: _____

---

### Section 2 - Property Ownership / Authorized Agent

Owner of Record:

Name: _Patricia Brook Pina_    Phone _781-585-3243_

Address _59 Parsonage Rd. Plympton Ma._    Signature _Patricia Brook Pina_
8-19-2002

Authorized Agent:

Name: _____    Phone: _____

Address: _____    Signature: _____

1

# TOWN OF PLYMPTON
## APPLICATION TO CONSTRUCT, REPAIR, RENOVATE OR DEMOLISH A ONE OR TWO FAMILY DWELLING

### This Section For Official Use Only

Building Permit Number : _____    Date Issued: _____

Signature: _____    Date : _____
Building Commissioner / Inspector of Buildings

### SECTION 1 - SITE INFORMATION

Property Address: 59 Parsonage Rd.

Assessors Map & Lot Number:    Map C 2    Lot 3

Zoning Information:    Zoning District_____    Proposed Use farm housing

Property Dimensions:  Lot Area (sf)_____    Frontage (ft)_____
Building Setbacks (ft):

| Front Yard | | Side Yards | | Rear Yard | |
|---|---|---|---|---|---|
| Required ___ | Provided ___ | Required ___ | Provided ___ | Required ___ | Provided ___ |

Water Supply:    Public_____    Private:_____
Flood Zone Information:    Zone:_____    Outside Flood Zone:_____
Sewerage Disposal System:    Municipal_____    On Site Disposal System:_____

### Section 2 - Property Ownership / Authorized Agent

Owner of Record:

Name: Patricia Renee Pina    Phone 781-585-3243

Address 59 Parsonage Rd Plympton    Signature Patricia Renee Pin
12/2/2002

Authorized Agent:    Phone:_____
Name:_____
Signature:_____
Address:_____

1

Dec 2, 2002.

To Board of Health:

I am writing to you to inform you that I have a house trailer that I plan to set up once we can determine were the best location is for the house trailer. It will be used for farm Employee housing once I get the place that perks & can put in a new well & put in electrical service for my farm housing At this time I have only the application for the farm housing application with the building inspector. I am currently using the unit for my argucultural endeavors on the farm to keep my home & business seperated at this time. Sincerly.

Patricia Renee Piva
59 Parsonage Road
Plympton, Ma 02367

PLYMPTON BOARD OF HEALTH
RECEIVED DATE 12/02/02

*To Be renewed by 12/10/03 T/G*

PERMIT NO. .............................

*5/7/03*

**TOWN OF PLYMPTON**
OFFICE OF THE BUILDING COMMISSIONER
5 PALMER ROAD
Telephone: ( 781 ) 585 - 3220

# BUILDING PERMIT

*Extension granted*

This is a permit for ..................................................

of ....................................................... to build on

...................................................... a ......................................................,
subject to all rules and regulations now in force in the Town
of Plympton and The Commonwealth of Massachusetts State
Building Code CMR 780. Work must commence within six
months.

Date............................................    ..................................................
                                                *INSPECTOR OF BUILDINGS / BUILDING COMMISSIONER*

THIS PERMIT CONVEYS NO RIGHT TO OCCUPY ANY STREET, ALLEY OR SIDEWALK OR PART THEREOF, EITHER TEMPORARILY OR PERMANENTLY. ENCROACHMENT ON PUBLIC PROPERTY, NOT SPECIFICALLY PERMITTED UNDER THE BUILDING CODE, MUST BE APPROVED BY THE JURISDICTION. STREET OR ALLEY GRADES AS WELL AS DEPTH AND LOCATION OF PUBLIC SEWERS MAY BE OBTAINED FROM THE HIGHWAY DEPARTMENT. THE ISSUANCE OF THIS PERMIT DOES NOT RELEASE THE APPLICANT FROM THE CONDITIONS OF ANY APPLICABLE SUBDIVISION RESTRICTIONS.

| | | |
|---|---|---|
| **WIRING INSP.** | ROUGH: | FINAL: |
| **PLUMBING INSP.** | ROUGH: | FINAL: |
| **GAS INSP.** | ROUGH: | FINAL: |
| **BUILDING INSP.** | FOUNDATION: | FRAME: |
| MINIMUM OF FOUR CALLED INSPECTIONS:<br>1. Foundation or Footings<br>2. Rough Frame<br>3. Prior to covering structural members<br>4. Final inspection before Occupancy | INSULATION: | FINAL: |
| **FIRE DEPARTMENT** | ALARMS: | BURNERS: |
| **OTHER** | | |

| | |
|---|---|
| APPROVED PLANS MUST BE RETAINED ON THE JOB AT ALL TIMES. BUILDING SHALL NOT BE OCCUPIED UNTIL FINAL INSPECTION AND | SEPARATE PERMITS ARE REQUIRED FOR ELECTRICAL, PLUMBING OR GAS INSTALLATIONS. WORK SHALL NOT PROCEED UNTIL THE VARIOUS |

# TOWN OF PLYMPTON

## APPLICATION TO CONSTRUCT, REPAIR, RENOVATE OR DEMOLISH ANY BUILDING OTHER THAN A ONE OR TWO FAMILY DWELLING

### This Section For Official Use Only

Building Permit Number : _____

Date Issued:_____

Signature: _____

Date :_____

Building Commissioner / Inspector of Buildings

---

### SECTION 1 - SITE INFORMATION

Property Address: *59 Parsonage Road, Plympton*

Assessors Map & Lot Number:    Map_____    Lot_____

Zoning Information:    Zoning District_____    Proposed Use_____

Property Dimensions:    Lot Area (sf)_____    Frontage (ft)_____

Building Setbacks (ft):

Front Yard    Side Yards    Rear Yard
Required _____ Provided _____    Required _____ Provided _____    Required _____ Provided _____

Water Supply:    Public_____    Private: *Well*

Flood Zone Information:    Zone:_____    Outside Flood Zone:_____

Sewerage Disposal System:    Municipal_____    On Site Disposal System:_____

---

### Section 2 - Property Ownership / Authorized Agent

Owner of Record:

Name: *Patricia Renee Ana*    Phone *781-585-3243*

Address *59 Parsonage Rd Plympton*    Signature *Patricia Renee Ana*
*6/26/2003*

Authorized Agent:

Name:_____    Phone:_____

Address:_____    Signature:_____

1

## LIST OF ABUTTERS

Pina, Patricia
59 Parsonage Road
Plympton, MA  02367

## ABUTTER/MAILING ADDRESS

Harvey, Steven TT.
KVH Realty Trust
35 Thomas Blanchard Ext.
Plympton, MA  02367                                               240/2C·

Ferrarro, Robert M, Joan A.
36 Thomas Blanchard Drive
Plympton, MA 02367                                                240/2C-

Davis, Elizabeth A.
43 Winnetuxet Road
Plympton, MA 02367                                                240/2C·

Knight, Chesterton S., Gail
45 Winnetuxet Road
Plympton, MA 02367                                                240/2C-

West, George L., Linda Susan
47 Winnetuxet Road
Plympton, MA  02367                                               240/2C-

Coughlin, Patricia A.
76 Parsonage Road
Plympton, MA  02367                                               240/2C

Collins, Anne K, TT.,
Anne K.Collins Living Trust
60 Parsonage Road
Plympton, MA  02367                                               240/2C

Barrow, Florence A.
31 Winnetuxet Road
Plympton, MA  02367                                               240/2C·

Kirkland, Emelia W.
32 Winnetuxet Road
Plympton, MA  02367


Michael P Stillman
43 Parsonage Road
Plympton, MA 02367


Josephn & Lynn Wiksten
45 Parsonage Road
Plympton, MA 02367


Matera A.L. Vopat N.A.
1372 Hancock Street
Quincy MA. 02169                                                          240/2C

                                                                          C2-3
                                                                          C2- 3
Harju Brothers Cranberries Inc
Cedar Street
Plympton, Ma. 02367


Jancie  Frates
46 Parsonage Road
Plympton, MA. 02367


The Town of Plympton
Plympton, Ma 02367


Mrs. Francis X. McKeown
44 Parsonage Road
Plympton, MA. 02367

Charles Auger, Manager
Nagog Hill Farm
74 Nagog Hill Road
Littleton, MA 01460

Timothy M. Nourse, President
Nourse Farm
41 River Road
Whately, MA 01393

Eric Olson, President
Olson's Green House - Bunk House
18 Cross Street
Lakeville, MA 02347

978-838-2897

Eric Olson, President
Olson's Greenhouse, Richardson
18 Cross Street
Lakeville, MA 02347

Eric Olson, President
Olson's Greenhouse, Pink Trailer #48
18 Cross Street
Lakeville, MA 02347

Thomas B. O'Brien
Orchard Hill Equestrian Center
224 Sawyer Hill Road
Berlin, MA 01503

978-838-0202

A. J. Collins, Owner
Our Post Farms
300 Prentice Street
Holliston, MA 01749

David R. Shearer, Owner
Pine Hill Orchards, Trailer
248 Greenfield Road
Colrain, MA 01340

A. Richard Bonanno, Owner
Pleasant Valley Gardens
255 Merrimack Street
Methuen, MA 01844

Max Russell, President
Russell Orchard, Inc.
143 Argilla Road
Ipswich, MA 01938

John G. Savage, President
Savage Farm
Lower Road
West Deerfield, MA 01342

John A. Simone, Partner
Simone Farms
445 Merrimack Street
Methuen, MA 01844

Bernie Smiarowski, Manager
Smiarowski Farm
487 Main Street
Hatfield, MA 01038

Manouel V. Ferjulian, Owner
Standard Orchards
7 Lewis Street
Hudson, MA 01749

Ray Nestrovich, Owner
State Line Orchards
561 Main Street
Granville, MA 01037

Glenn Stillman, Owner
Stillman Farm
1399 Lancaster Avenue
Lunenburg, MA 01531

Carl Someone, Owner
Stonefield Farm
91 Martin Street
Acton, MA 01720

George B. Stowe
Stowe Farm Orchard
15 Stowe Road
Millbury, MA 01527

William E. Broderick, Owner
Sunny Crest Orchards
24 Hawkins Lane
Sterling, MA 01564

Martha M. Zigmont, Owner
Tee Zee Farm
501 Main Street
Hatfield, MA 01038

Maurice F. Tougas, Owner
Tougas Farm
246 Ball Street
Northborough, MA 01532

Edwin Matuszko, Owner
Twin Oaks Farm
116 Stockbridge Street
Hadley, MA 01035

David Garcia-Rivera, Manager
Verrill Farm
415 Wheeler Road
Concord, MA 01742

Al Volante, President
Volante Farm
226 Brookside Road
Needham, MA 02192

David G. Bishop, Owner
Wellsmont Orchards, Inc.
106 Bardwells Ferry Road
Shelburne, MA 01370-9744

Donald Green, Owner
Westward Orchards, Inc.
90 Oak Hill Rd - County Rd.
Harvard, MA 01451

Wayc Mezitt, President
Weston Nurseries
30 Phipps Street
Weston, MA 01748

Roger Mezitt, President
Weston Nurseries-Phipps Street
30 Phipps Street
Weston, MA 01748

Sterling Suffolk Racecourse
Suffolk Downs
220 Revere Beach Parkway
Revere, MA 02151

Kermit J. Zerr
Bellwether Solutions, LLC
Four Hundred Amherst St, Ste. 201, P.O.
Box 6180
Nashua, NH 03063-6180